is 23-30431 Steven M. Gruver v. Allstate Insurance Company of Canada. Mr. Donovan, whenever you're ready, take it away. May it please the Court, James Donovan on behalf of Allstate Insurance Company of Canada, Inc. The issue I'd like to bring to the Court's attention in this argument is principally on a credit that we're seeking in regards to affecting the judgment. And the position essentially is this, that the jury came back with a verdict and the Court rendered the judgment of $122,000 against Mr. Ryan Itstu and Allstate. So the reason we're contending that the judgment should be reduced to the $22,000 under this particular assignment of error is that there was a proffer in the record of the gasgate release that was entered into between State Farm, the Itstus, and the plaintiffs. The second portion of that particular argument is that there's actually a letter that is in the record that had been jurisdiction over Allstate when there was an affidavit of the Allstate adjuster that attached the letter. And what the letter does is it illuminates what the gasgate release is. So that's actually a part of the record in the filing. And it says in the letter that Allstate, you are an excess carrier. Allstate, we settled with the plaintiffs. The settlement was for $100,000. We are seeking from you a settlement, a resolution of this case for a sum exceeding the amounts that State Farm paid you. So it actually is giving you the perspective, the intention of the release from the perspective of the groovers because they're the ones that entered into that release. So that's in the record. Another thing that comes up regarding why the issue should be changed, the judgment should be modified, is that when these exhibits, D-4 as a proffer and D-5 as a proffer, were put into the record, the issue would be that they should come in, but they don't necessarily have to go to the jury because, as the court ultimately ruled, this issue was one in which the court would decide post-verdict. And this happens— Well, I mean, that's my one sort of—that's my major puzzlement, I guess, about this case is why did the district court say that? I'm going to think about this after the verdict, but what happened after the verdict? I would assume that the district court would then take it up after the verdict. So why didn't the district court? It was hoped that once the verdict came in, we would receive a judgment which would say you're cast in $22,000, but that didn't occur. So I don't know if the court expected another motion to be filed pre the rendering of the judgment off the verdict or not. But what did you do after verdict in order to make happen whatever you think should happen? Yeah, so after that happens, we filed the motion to alter the judgment. And this is where the—actually, this is where this kind of ends up as an issue. The court rules that, look, Allstate, you didn't prove that there was a gasgate release or entitled to a credit or an amount because the document is not in the record or you didn't try to—or it's not introduced into the record. Now, at the same time, there's footnote 28 in the ruling that says, oh, yeah, y'all proffered this, but we excluded it, and I'm confined to the record as it's before me, so I can't rule on it. It's basically how the ultimate decision was made not to use the release. So there's a—they're saying the release isn't in the record because we kept it out at the trial, even though it's a proffer. And the court says, and I will be deciding this if it's necessary, because, for instance, if the verdict comes back and it's zero, this is a moot issue, everybody goes away. But it became an issue once the verdict came. So it's sitting in the record as a proffer. The letter's already in the record. It's also proffered as well as D-5 in the record. And then the court rules, well, you didn't get it—I excluded it from the trial. So when you file your post-motion, it's as if, well, is Allstate supposed to reintroduce it with the motion? That wasn't done, but it's kind of confusing on what we should be doing, especially in the context of this case, because the—it's not like the court didn't know there was a gasgate release. The court, in its ruling on the motion to dismiss, to keep Allstate in the jurisdiction of the court, mentions the gasgate release. It's written out. When cross motions for summary judgment are filed, the gasgate release is known to the court. So in this particular instance, I think when it all runs to one question, it's that, hey, this is an abuse of a discretion of a substantial right of Allstate, and they're prejudiced by it. Allstate shouldn't—the grouper shouldn't get recovery of the same debt twice, and Allstate shouldn't be compelled to pay it. Is Allstate arguing that the gasgate settlement credit is automatic, or do you agree that Allstate had a burden to prove their entitlement to the credit with concrete evidence? It was not automatic. They do have to prove it. That's why I'm suggesting to the court that the document should have been for the courts, not for the jury. So what's the proper—what is the proper airtight procedure for determining whether a defendant is entitled to a settlement credit? Like the proper procedure for doing— There's probably more than one, maybe. You could do it post—pre—well, if you do it pre-trial, it may not be necessary. It might be premature, and it might be decided. I think possibly it would be post-trial motion. And you can—okay, so there's a verdict. Now it's an issue. It doesn't become an issue to the verdict. So if after trial, are you saying a Rule 59e motion is the proper vehicle to assert that? I do. I do. And that's what was done in this case. Does it need to be raised before judgment, or is after—I mean, what about timing? Well, I think it was—actually, probably, I don't think we had the expectation the judge was going to rule on the credit. But I think the judge had the record in front of her to do so, because everything was in the record. Nothing changed when we filed the motion, because the court said, hey, you don't have before me what I need in order to make a decision. So that's where it all runs back to that question. Does this document actually—can it be utilized in order to make a ruling? So I would suggest you have to wait until the verdict. You could file—it's possible you could file a motion right after the verdict, but before there's a judgment sign saying, hey, give us the credit. You could file some post-trial motion. But it's the same effect. Once the judge rules on the judgment, file a 59E motion to alter it, you're asking that the court address the credit. And it was just not expected that the court would say, hey, the document's not there. And in some sense, it doesn't—if you have the actual letter in the record, and you have the presentation from the plaintiff's perspective of exactly what they entered into, the only thing that letter doesn't have is the amount. So from all states' perspective, when you get to the end of this, it's an issue of an abuse of discretion if the court not utilizing the document that was proffered into the record. And unless you have any other questions, I'll— Thank you, Mr. Donovan. We'll now hear from counsel for the Groovers. Mr. Fazzola, welcome. Thank you. Good afternoon, Your Honors. May it please the court, Jonathan Fazzola on behalf of Stephen and Rae Ann Groover. Now that Allstate Canada has apparently conceded a settlement credit in gas gate release situations doesn't apply automatically, I want to talk about the proper procedure that Allstate should have followed in this case in seeking it. In the procedure, in fact, there's a road map laid out for Allstate that it could and should have followed. In Miller, the single case, it is cited kind of for the proposition that it's now abandoned that a settlement credit is automatically and without proof due to an excess insurer in gas gate type arrangements. In Miller, the excess carrier raises settlement credit as an affirmative defense. And then there was a flurry of post-verdict pre-judgment motions, which included affidavits to make the evidence competent and admissible. And I believe there may have been some status hearings and other evidentiary hearings on the issue. It's all in the district court's docket, not up in appeal, in which the parties debated and discussed was a settlement credit due and if so, in what amount. When should Allstate have raised it? They should have raised it, well, they could have raised it multiple stages of the litigation. They absolutely should have raised it as an affirmative defense. They could have raised it if they had preserved the issue by raising it as an affirmative defense on summary judgment if they had evidentiary bases and legal bases to do so, which courts in this district have recognized and allows parties to do on summary judgment on multiple occasions. Or at a minimum, they should have raised it post-verdict, but pre-judgment. And that is exactly what happened in Miller. And so Miller confirms that where... Is a 59E motion an improper way to raise it? It is under the facts of this case, Your Honor. And I can tell you why. In this case, Allstate Canada never sought affirmatively informally a settlement credit until after judgment was entered. Allstate's counsel at trial made a proffer of documents that had been excluded pre-trial, but it didn't make an argument during that proffer and it didn't make an offer of proof to authenticate and make those documents admissible. That's one thing. But that it was doing so to seek a post, a settlement credit on any verdict that was entered pre-judgment, on any verdict that was entered. And because of that, when it moved on a 59E for a settlement credit on a judgment that had already been entered, it categorically as a matter of law could not satisfy the burden and the standards of a Rule 59E motion, which this Court has said in multiple cases, is not an opportunity to rehash arguments that hadn't been raised before or offer evidence that a party had at its disposal and didn't offer before. That's exactly what a post-judgment argument for a settlement credit was in this case because it had never been made before. And it also means that Allstate categorically could not show a manifest error of law or fact in the rendering of the judgment because the Court didn't have before, when it rendered judgment, any ask formally or otherwise from Allstate that it was seeking a settlement credit, let alone admissible evidence or any type of information on which it could rely to assess and determine whether a settlement credit was appropriate or owed in any circumstance to Allstate Canada. When did Allstate proffer the Gasquet release during trial? And I want to use the term proffer in the appropriate context because I'm not sure it's clear from the records in Allstate's brief. It was after the close of the Groover's evidence and it was done essentially, Allstate's counsel conceded on the record, just for preserving them for the record, essentially for appeal. It wasn't as part of an argument that we are going to seek a settlement credit and we need this evidence to do so. There wasn't an argument that if you allow us to introduce this evidence now, Your Honor, we'll seek a settlement credit at trial. Is that when the district court said, well, I'll have to consider that post-verdict settlements or credits or something? And exactly. So Miller provides a roadmap and then the Court, in elucidating its reasons for denying Allstate's, sorry, for granting our unopposed motions in limine pre-trial, the Court added additional reasons on the record and Chief Judge Dick said that's an issue, the settlement credit issue, is one to be taken up post-verdict. What happened when the verdict came in? The Court said, do the parties have any post-verdict motions? And Allstate immediately stood up. It's in the record. The first thing they said is, Your Honor, I request that the verdict be made a judgment of the Court. Even then the Court said, following that, if the parties would like to file post-trial motions, they can do so in the record by filing a written motion. And then the Court waited two weeks, two whole weeks, almost two weeks, 13 days before entering formal judgment. And then 23 days after that, Allstate came forward and said, wait, wait, wait, Your Honor, we want to seek a settlement credit and we want to do so based on documents, primarily a settlement agreement release that never made it into the record. And even if it had made it into the record, Allstate made no showing on, through its prof or otherwise, that it would be able to authenticate or make that admissible. So were any of your motions, I just don't remember this, were any of your motions in limine, any of them directed to this Gasquet release? They were. We did an omnibus motion in limine directed toward the Gasquet release and multiple other documents, including the State Farm Policy. We also had a separate motion in limine directed toward the general argument at trial regarding a settlement credit, because we didn't learn that Allstate was going to raise that issue until they told us their inserts for the proposed pretrial orders, first time it had been raised. So you had a motion in limine directed to exclude the Gasquet release? For purposes of trial, that's right, because it would not be relevant to any of the issues at trial since the Court, on our affirmative summary judgment motion, had already ruled as a matter of law that there was coverage under the policy. So issues of insurance wouldn't have been proper for the jury at trial. They would have, if they were ever to be raised and argued, would have been a post-verdict issue had Allstate sought to avail itself of it. Let's assume that the Gasquet release was properly entered into the record at some point, and you say, and evidently your friend on the other side agrees, that it wouldn't have automatically entitled Allstate to a credit, right? Correct. What more would have to be, I'm just trying to imagine, what would the parties be arguing about at that point with respect to a credit? Well, they'd have to show that the Gasquet release expressly contemplated or even stipulated to a credit, which is not a necessary feature of a Gasquet release. And then they would also, another additional argument might be that Allstate would have to show that under its excess policy, it was self-entitled to claim that type of credit from its insured. Okay, thank you. And if Your Honors have no further questions, I'll cede my time and reiterate that we believe that the judgments and rulings below should all be affirmed. Okay, Mr. Pezzulla, thank you. Mr. Donovan, you're back for five minutes. Just briefly, the issue came up officially from the perspective of Allstate is in the pretrial order when it was submitted. This is pretrial number one. On the issue of the credit, if the Allstate, once the document goes into evidence, it checks off all the issues regarding what the parties agreed to, and it's a court issue, it's a judge issue on whether or not you're going to accept it and what effect you're going to give to it. So from my perspective is, the issue did come up at pretrial. The exhibits were also requested to be put in. They were out, and then when we got to the court and the case is being tried, the judge says, this isn't going to issue that I'm going to be raising until after the verdict comes in, and there's going to be a judgment that would make it necessary, and that's what happened. And so, the judge could very well, with the record as it was, rule and rule that, okay, the document has been proffered, it's not going to go to the jury, but I'm going to look at it and I can get the credit. Quick question. Is there any dispute, at least from your side, about whether Canadian law applies to the interpretation of the policy? I think the Canadian law will apply to the policy, will apply to the policy on the issue of, and my appreciation of getting into who's paying the premiums and . . . Because I think your brief only cites, correct me if I'm wrong, I think your brief only cites Louisiana law. That is correct, Your Honor. Okay. Okay. Thank you. Thank you. All right, counsel, thank you both. We appreciate your able arguments. The case is submitted, and that concludes our final case of the week. So, the court will stand adjourned.